ARMSTRONG v. STATE et al.

No. 1859.

Court of Civil Appeals of Texas. Eastland.

Dec. 9, 1938.

Lacy, Price & Williams, of Longview, for appellant.

Fred Erisman, of Longview, for appellees.

LESLIE, Chief Justice.

The State of Texas, through the Commissioners' Court of Gregg County, instituted condemnation proceedings against T. M. Armstrong with the view of appropriating for a public road 6.74 acres of his land lying in front of his residence and situated in the producing part of the East Texas oil field. The litigation took the usual course in condemnation proceedings. The Commissioners recommended payment of damages in the sum of $725. Armstrong filed exceptions to the report of the Commissioners, etc., and when the cause reached the County Court he filed his pleadings presenting his defenses and claiming damages in the sum of $80,000. Thereafter he presented his motion for a continuance of the cause and the same was overruled by the court upon whose order the case proceeded to trial. On a single issue submitted to a jury, a verdict was returned and judgment entered thereon in favor of Armstrong assessing his damages at $750, costs, etc. In due time he filed a motion for a new trial and from the overruling of the same he prosecutes this appeal.

Following the report of the Commissioners, etc., Gregg County made a sufficient deposit in the Registry of the County to enable it to proceed with the appropriation of the condemned land.

The judge of the county court had set the cause, along with others, for trial on Monday of the week beginning September 27, 1937. In the week prior to this date, Armstrong, through his attorney Jack Price (of the firm of Lacy, Price & Williams) communicated with the Hon. Fred Erisman who represented Gregg County in the condemnation proceedings, and inquired of him if he (Erisman) would be ready to try the Armstrong case during the week of September 27. It is disclosed by the motion and testimony that said attorney replied that he would not be ready to try the case during that week. Thereupon the attorneys for Armstrong and the County agreed that the case would be passed when called for trial during the week of September 27. When the case was called for trial according to the setting, Attorney Erisman advised the court for the first time of the agreement between himself and the attorney for appellant, and suggested to the court that the case be passed pursuant to the agreement.

The agreement was not reduced to writing, but neither the fact of its existence nor the terms thereof were disputed. Upon the strength of the agreement the parties through their attorneys' dismissed any thought of trying the case during the week for which it was set, and Armstrong's wit-

nesses (three in number) who were then available dispersed, some of them being out of the State when the court, disregarding the agreement, later put the case to trial according to the original setting. At this juncture of the proceeding Armstrong filed his first motion for a continuance. It sets out the above agreement in detail and proceeds upon the theory that the case should be continued "by consent of the parties" under the provisions of Art. 2167, R.S.1925. That article reads: "No application for a continuance shall be heard before the defendant files his defense, nor shall any continuance be granted except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law."

The appellant further contends that the application for continuance and evidence adduced thereunder entitled him to a continuance under Art. 2168, R.S.1925.

The motion for continuance sets up the lack of certain testimony due to the absence of the three witnesses who had dispersed in reliance upon the agreement. The motion reflects the materiality of the testimony and the inability to procure the same or like testimony elsewhere, under the circumstances, and that but for the original understanding between the attorneys the witnesses would have been present for the trial.

The motion further presents that the defendant Armstrong at the time the case was put to trial was sick and unable to attend the trial without great hazard to his health and life and that his testimony was material on every phase or issue in his case. He did not in fact attend the trial and the contention is that sickness prevented his doing so.

Before acting upon the motion for a continuance the trial judge heard some testimony. The attorney for Armstrong testified in support of the allegations of the motion, and especially those pertaining to the agreement of the attorneys and the results following that understanding. The attorney for the County showed no disposition or willingness to proceed with the trial, suggested a postponement or continuance in accordance with the agreement and he was further of the opinion that a delay would operate to the advantage of his client. Questioned on the witness stand he testified: "It is still my opinion that this case shouldn't be tried today or this week. It has been my experience that when an agreement is reached, it is usually passed." When asked "Do you know of any case in this county for the court to push a case, even over the protests of both attorneys?" he answered "No sir."

The court also called District Judge C. E. McGaw, who testified that the day before Armstrong had served on a jury in his court and that he had excused him from further jury service on the ground that he had a case pending in court that might be called at any time. Judge McGaw further testified that Armstrong's reputation for truth and veracity was good so far as he knew. That prior to becoming district judge he had practiced in the district and county courts of that county. In this connection he was asked: "While you were practicing in the County Court, did the Judge customarily recognize an agreement the attorneys made to pass various cases?" To this he answered "They did." Being further asked "Since Judge Meredith has been on the bench, have you heard anything with reference to him being any different than Judge Leaverton?" He answered "I have not." There was no objection to such testimony, and whether such "custom" was proper or otherwise, it seems to have had something to do with the conduct of the attorneys.

The motion for a continuance was also supported by an affidavit attached thereto and made by J. D. Flemings, the family doctor of T. M. Armstrong. In part he stated in the affidavit: "I am the family physician of T. M. Armstrong of Gladewater, Texas. I am a regular licensed and practicing M.D. and have been such for the past six years. That I have for some time been treating the said T. M. Armstrong for Post Influenza Neuritis and that I am now treating the said T. M. Armstrong for Post Influenza Neuritis Acute Block; that the said T. M. Armstrong is now confined to his bed and it would be dangerous to his life and highly detrimental to his health for him to get out of bed and be in attendance at court this week in the condition that he is in. It is necessary and advisable that he remain in bed for at least ten days. If he does not do so the ailment from which he is suffering may result in his death."

Dr. E. L. Jones called by the court and being duly sworn testified that he went to the home of T. M. Armstrong, found him in bed and examined him; that he was complaining, that he found Armstrong's

heart, chest, temperature and pulse normal, that his throat was red, but he found no "acute infection." That from the "objective physical examination" he would say Armstrong was able to attend trial of the case. On cross examination Dr. Jones testified that the pain which Armstrong claimed to have in his arm "could be a symptom of angina pectoris." That symptoms Mr. Armstrong had could be "indications of post influenza neuritis." That if Armstrong were suffering to the extent "he said he was" he would not "imagine that he felt like getting up and doing like he usually would." This doctor further stated that he did not know whether "Mr. Armstrong was malingering or not." He said "I don't say that he was or that he wasn't."

By different propositions the appellant predicates error on the action of the court in overruling his motion for a continuance on each of the grounds above set out. We shall consider these contentions together, as the statement under each substantially embraces the statement under another.

█ It is the general rule that agreements of counsel in litigation should be reduced to writing and filed with the papers in the case but it has been held that where the fact of the agreement and the terms thereof are not disputed, proper legal effect should be given to such agreement. In the case of Thomas v. Smith, Tex.Civ.App., 60 S.W.2d 514, it was held [page 516]: "It is quite correct that District and County Court Rule 47 requires an agreement of attorneys to be reduced to writing and filed in the case. Willis & Bro. v. Sims' Heirs (Tex.Civ.App.) 47 S.W. 55; Ingram v. McClure (Tex.Civ.App.) 151 S.W. 339. The purpose and object of the rule is to relieve the court of the necessity of determining disputes. 60 C.J. § 5, p. 41. But an oral stipulation which is not disputed is regarded obligatory, though not reduced to writing, and may be enforced. 60 C.J. p. 43; 36 Cyc. p. 1281; Birdwell v. Cox, 18 Tex. 535; Manowitz v. Gaenslen (Tex.Civ. App.) 142 S.W. 963. And also where the oral stipulation is not disputed estoppel to object to want of writing may be predicated where one of the parties had done or omitted to do some act in reliance upon the stipulation. * * *"

In 60 C.J. p. 43, sec. 9, the rule is stated thus: "The rule requiring stipulations to be in writing has no application to a stipulation which is admitted by the party against whom it is sought to be enforced; and especially is this so where the agreement has been acted on by one of the parties. Where the facts relied upon by the moving party are not controverted, there is no reason for the application of the rule requiring writing."

In addition to the Texas cases cited in the above excerpt, the text here adds Field v. Fowler, 62 Tex. 65.

█ In the instant case there was no dispute that the agreement was made nor is there any dispute concerning the terms thereof. Under the above authorities neither party could have avoided the effect of the agreement and we think the circumstances surrounding the making of the same, together with the willingness of the attorneys and litigants to abide by it, created a situation which required the trial court to respect the same.

█ The motion for a continuance was not contested by the appellee and it would seem that the case proceeded to trial under protest by both appellant and appellee. The appellee has not briefed the case. The County has already taken possession of the land. There is no showing that the granting of the motion would have disrupted or disarranged the docket or the business of the court and the agreement was apparently not made in bad faith. The combination of circumstances thus reflected manifests that the court in overruling the motion for continuance, and later the motion for new trial raising the point, committed prejudicial error entitling the appellant to a reversal of the judgment. McBride v. Settles, Tex.Sup., 16 S.W. 422; Travelers' Ins. Co. v. Arant, Tex.Civ.App., 40 S.W. 853; Manowitz v. Gaenslen, supra; 9 Tex.Jur. p. 657, sec. 9.

For the reasons assigned the judgment of the trial court is reversed and the cause remanded.